UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TAMMY LYNN ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:14-CV-551-TAV-CCS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 14 and 15] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16 and 17]. Tammy Lynn Adams ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On August 12, 2011, the Plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began July 9, 2011. [Tr. 130-33]. After her application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. [Tr. 86]. On February 2, 2012, a hearing was held before an ALJ to review the determination of the Plaintiff's claim. [Tr. 29-59]. On May 24, 2013, the ALJ found that the Plaintiff was not disabled. [Tr. 13-28]. The Appeals Council denied the Plaintiff's request for

review [Tr. 10-12]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on November 11, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.  ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since July 9, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD); bipolar disorder with anxiety and depression; back pain; fibromyalgia; and hypertension (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant could sit, stand and walk each for no more than four hours in an eight-hour workday; she cannot have concentrated exposure to pulmonary irritants, extreme temperatures, or humidity levels; she cannot work at unprotected heights or around hazardous equipment or machinery; she cannot work any highly stressful production rate or quota jobs; and she can have no more than occasional and causal interaction with coworkers, supervisors, or the public.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 28, 1970 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English. (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 9, 2011, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 18-24].

## II. DISABILITY ELIGIBILITY

This case involves an application for DIB benefits. A claimant qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but

3

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); see also 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

4

## III.	STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (internal citations omitted)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless. See id. at 546-47 (holding that if the ALJ's ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard, the error is harmless and does not warrant remand).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV. POSITIONS OF THE PARTIES**

The Plaintiff argues that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence for two reasons. First, the Plaintiff maintains that the ALJ erred by failing to give due consideration to the opinions of her treating physicians Charles Durand, M.D., and David Snow, M.D. [Doc. 15 at 4-7]. Second, the Plaintiff contends that her credibility was not properly weighed by the ALJ. [Id. at 7-9].

The Commissioner responds that the ALJ gave good reason for the assignment of weight to each of the Plaintiff's treating physicians. [Doc. 17 at 14-19]. In addition, the Commissioner argues that the ALJ properly evaluated the Plaintiff's credibility pursuant to 20 C.F.R. § 404.1529. [Id. at 10-13]. In sum, the Commissioner argues that the ALJ's decision is supported by substantial evidence. [Id. at 9-10].

## V. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Treating Physician Opinions

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. § 404.1527(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the factors outlined in 20 C.F.R.§ 404.1527(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. § 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). An ALJ does not measure medical evidence in a vacuum, but must consider physician opinions in conjunction with the record as a whole. See 20 C.F.R. § 404.1527(b) (explaining that in considering medical opinions, the Administration "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive").

Nonetheless, the ultimate decision of disability rests with the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 F. App'x 988, 992 (6th Cir. Nov. 28, 2007).

*1. Charles Durand, M.D.*

The Plaintiff began receiving treatment from Dr. Durand primarily for back pain and chronic use of analgesic medication in 2007. [Tr. 233-34, 336]. Most recently, on July 20, 2011, Dr. Durand assessed the Plaintiff's functional limitations, opining that she could: stand without interruption for 30 minutes, sit without interruption for 60 minutes, and walk 200 feet at a time; repetitively lift and carry five pounds and push and pull 10 pounds; occasionally lift and carry 10 pounds and push and pull 20 pounds; manipulate objects without difficulty; and bend but never stoop. [Tr. 337].

In the disability determination, the ALJ discussed Dr. Durand's treatment records, noting the following;

> The claimant has been treated by Charles Durand, M.D., for various complaints. She has been diagnosed with hypertension and she takes medication (Exhibit B-12F). Despite complaints of chronic back pain and fibromyalgia, Dr. Durand noted that physical examinations showed no evidence of bladder or bowel dysfunction, positive straight leg raise or abnormal gait. Further, the claimant has had full range of motion of the spine and fibromyalgia was fairly asymptomatic with minimal trigger points (Exhibit B-12F). The record shows the claimant was involved in a motor vehicle accident in December 2011, but x-rays and CT scans of her back and neck were unremarkable and straight leg raises in October 2012 were negative (Exhibit B-12F). The claimant has been treated conservatively (Exhibit B-12F) and she reported substantial improvement (Exhibit B-12F, page 7).

[Tr. 21]. The ALJ went on to summarize the July 20, 2011 functional limitations assessed by Dr. Durand and assigned "little weight" to the opinion, citing that it was "overly restrictive and is not consistent with the objective medical evidence, such as unremarkable back and neck x-rays and CT scans, normal gait and station, negative straight leg raises and normal muscle condition and strength." [Id.].

8

On appeal, the Plaintiff argues that the ALJ did not give specific reasons for discounting Dr. Durand's opinion. [Doc. 15 at 5]. The Plaintiff maintains that the ALJ's reference to x-rays and a CT scan from a single emergency room visit for injuries sustained from a motor vehicle accident does not constitute good reason because the imaging studies were strictly done for the purpose of evaluating injuries from her car accident, and even after her symptoms from the accident improved, she continued to be treated by Dr. Durand for chronic back pain. [Id.]. Furthermore, the Plaintiff points out that she has experienced lower back pain for nearly eight years and that Dr. Durand's treatment notes "are replete with evidence signs and symptoms consistent with chronic low back pain." [Id.]. Specifically, the Plaintiff points to records documenting (1) paralumbar muscle tenderness, (2) spasms, (3) a reduction of the lordotic curve, and (4) positive straight leg raises as evidence supporting Dr. Durand's functional limitations. [Id.].

The Commissioner argues that Dr. Durand's review of the imaging studies were in conjunction with his ongoing supervision on the Plaintiff's fibromyalgia and degenerative joint disease of the spine, and therefore, it was perfectly acceptable for the ALJ to reference them as one reason for assigning less than full weight to Dr. Durand's opinion. [Doc. 17 at 14]. Moreover, the Commissioner maintains that the Plaintiff's argument is misplaced because in addition to the normal imaging studies, the ALJ also provided other specific reasons, including Dr. Durand's normal examination findings. [Id.].

The Court concurs with the Commissioner that the ALJ gave good reason for the weight assigned to Dr. Durand's opinion and further finds that her reasoning is supported by substantial evidence. In finding the opinion inconsistent with objective medical evidence, the ALJ specifically recited the evidence that discredited the treating physician's opinion. In addition to

9

the unremarkable back and neck x-rays and CT scan, the ALJ specifically noted that Dr. Durand's own treatment records documented that the Plaintiff exhibited normal gait and station, was negative for straight leg raises, and had normal muscle condition and strength. The Court finds these specific reasons comport with the "good reason" requirement.

The fact that the Plaintiff's continued to suffer from chronic back pain, as argued by the Plaintiff, only demonstrates that the she suffered from a specific aliment, and not necessarily the limiting effects of that aliment. While the Plaintiff argues that Dr. Durand frequently observed paralumbar muscle tenderness, treatment notes consistently reflect that the Plaintiff's pain was well managed by medication. Throughout her treatment history with Dr. Durand, the Plaintiff consistently reported that her pain was between a two and four on a scale of one to 10 when she took her medication. [Tr. 370]. The Plaintiff even testified during the hearing that her medication greatly reduced her back pain to a two and she experienced no side effects from her medicine. [Tr. 42]. Moreover, Dr. Durand articulated on numerous occasions that the Plaintiff's back pain had improved and was generally well controlled with medication. [Tr. 265, 267-69, 342, 371, 374, 376].

In addition, the Plaintiff's citation to back spasms and positive straight leg raises as contrary evidence to the ALJ's decision is also without merit. While the Plaintiff experienced back spasms at times, the record indicates that the last time she complained of a spasm was July 8, 2010, one year before her alleged onset date. [Tr. 262]. Similarly, since the Plaintiff's onset date, she has been negative for straight leg raises. [Tr. 262, 265, 267, 270, 342, 372, 374]. The Plaintiff's single citation to a positive straight leg raise is from 2008 [Tr. 245] and is much too attenuated in time to have a meaningful effect upon the relevant period in question, particularly where the Plaintiff has been negative for such testing since then.

The Court acknowledges that despite the appearance of conservative treatment and positive results with medication, Dr. Durand consistently notated functional limitations more severe than those found by the ALJ. [Tr. 262, 267, 272]. However, because the ALJ provided good reason, supported by substantial evidence, for declining to give Dr. Durand less than controlling weight, the ALJ's decision falls well within the "zone of choice" envisioned by the regulations and should therefore be left undisturbed.

Accordingly, the Court finds the Plaintiff's allegation of error is not well-taken.

*2.    David Snow, M.D.*

The Plaintiff' has received psychiatric treatment from Dr. Snow since at least 2002 when she was initially diagnosed with bipolar disorder. [Tr. 288, 378]. During the relevant time period in question, Dr. Snow provided medication management to the Plaintiff for her bipolar disorder and complaints of anxiety and depressed mood. [Tr. 276-83, 381-85].

On February 8, 2012, Dr. Snow completed a questionnaire entitled, "Limitations Related to Psychiatric State." [Tr. 379-80]. The questionnaire, which consisted of 20 hypothetical limitations regarding a claimant's mental capacity to understand, concentrate, interact socially, and adapt to workplace expectations, required Dr. Snow to specify whether the Plaintiff was "Not Significantly Limited," "Moderately Limited," or "Markedly Limited" in each proposed category of limitation. [Id.]. Dr. Snow opined that the Plaintiff had marked limitations in her ability to: complete a normal workday and workweek without interruptions from psychologically based symptoms; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and travel in unfamiliar places or use public transportation. [Id.]. The Plaintiff exhibited moderate limitations in her ability to: understand, remember, and carry out detailed instructions; maintain attention

11

and concentration for extended periods; perform activities within a schedule or maintain regular attendance and punctuality; sustain an ordinary routine without special supervision; work in coordination with and proximity to others without being distracted by them; accept instructions and respond appropriately to criticism or changes in the work setting; and set realistic goals or make plans independent of others. [Id.]. Finally, Dr. Snow found that the Plaintiff had no significant limitations in her ability to: remember locations or work-like procedures; remember, understand, and carry out simple instructions; make simple work-related decisions; ask simple questions and request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness; and be aware of normal hazards and take appropriate precautions. [Id.].

In her decision, the ALJ noted that in treating the Plaintiff for bipolar disorder since 2002, Dr. Snow's treatment notes reflected that the Plaintiff "experienced familial discord, relationship problems, financial stressors and difficulty coping with multiple deaths." [Id.]. Dr. Snow's questionnaire was then discussed, specifically highlighting the findings of marked limitations. [Id.]. The ALJ assigned little weight only to the limitations Dr. Snow indicated were marked, finding that Dr. Snow's opinion in that regard was inconsistent with his global assessment of functioning ("GAF") scores assigned to the Plaintiff during her treatment with him. Specifically, the ALJ found the scores, which ranged between 60 and 80, "indicate[d] no more than moderate to mild symptoms and that the claimant generally functions well (Exhibit B-13F). Thus, the GAF scores assigned to the claimant in his treatment notes do not support the opinion of marked limitations." [Id.]. However, as to the remaining portions of Dr. Snow's opinion, which reflected no more than moderate limitations, the ALJ assigned "great weight" to the opinion because "these portions of his opinion are consistent with his treating notes and the medical evidence." [Id.].

12

The Plaintiff argues that the ALJ's reliance on Dr. Snow's GAF scores was improper because it is unclear as to "how or in what manner Dr. Snow's opinion is not consistent with his GAF scores." [Doc. 15 at 6]. Citing this Court's opinion in Ott v. Astrue, No. 3:09-CV-166, 2010 WL 3087421, at *9 (E.D. Tenn. June 30, 2010) adopted by No. 3:09-CV-166, 2010 WL 3087420, at *1 (E.D. Tenn. Aug. 5, 2010), the Plaintiff contends that discounting Dr. Snow's opinion based upon his GAF scores was also improper because his treatment records do not provide any indication that the GAF scores were meant to assess the Plaintiff's occupational functioning. [Id. at 6-7].

The Commissioner argues that while an ALJ is not bound to reference GAF scores in the disability determination, it is certainly permissible to consider GAF scores when constructing a claimant's RFC. [Doc. 17 at 16]. Because Dr. Snow consistently assessed GAF scores that presented no more than a slight impairment in social or occupational functioning, the Commissioner argues that Dr. Snow's opinion was properly given less than controlling weight. [Id.]. In addition, the Commissioner contends that Dr. Snow's treatment records, which connote unremarkable mental examination findings, do not support the marked limitations he assessed. [Id. at 17].

In Ott v. Astrue, this Court cautioned reliance on GAF scores, explaining that a claimant's GAF score represents a clinician's subjective assessment of the claimant's overall physiological condition and does not serve as raw medical data. 2010 WL 3087421, at *9 (citing Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 503 n.7 (6th Cir. 2006)). This is because GAF scores are often times based on many different variables, and is therefore inept, in and of itself, to establish a claimant's ability to do work related activities absent an explicit indication from the clinician that a GAF score was assessed in regard to the claimant's work capacity. Id.

13

Nonetheless, GAF scores may still be useful in assessing a claimant's level of function. See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.").

The Court finds that it was appropriate for the ALJ to take the Plaintiff's GAF scores into consideration despite the fact that Dr. Snow did not specifically indicate that the scores were meant to assess the Plaintiff's mental capacity to work. Here, the ALJ did not place exclusive reliance on the scores to formulate the Plaintiff's mental RFC; rather, the ALJ appropriately used the scores to discount part of Dr. Snow's opinion. See Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005) (holding that the ALJ did not err in assigning less than controlling weight to the opinion of plaintiff's treating physician who had opined extreme limitations but whose treatment notes only reflected a GAF of 58, indicating moderate symptoms); Owens v. Comm'r of Soc. Sec., No. 3:11 CV 2690, 2013 WL 1284305, at *11 (N.D. Ohio Jan. 22, 2013) ("Therefore, the ALJ did not err by using Dr. Barnes' GAF scores—which represented her judgment of Plaintiff's functioning—to contradict her more restrictive assessment finding Plaintiff markedly limited and disabled.") adopted by 2013 WL 1284299, at *1 (N.D. Ohio Mar. 26, 2013). During the relevant time period, Dr. Snow assigned the Plaintiff a GAF score at almost every appointment. [Tr. 276-83, 81-85]. These scores never fell below 60 and ranged as high as 85 [Id.], reflecting the following level of social, occupational, or school functioning: a score of 60 indicates moderate symptoms or moderate difficulty; a score between 61 and 70 reflects mild symptoms or some difficulty; a score between 71 and 80 indicates that any symptoms that are present are transient in nature, expected reactions to psychosocial stressor, and present no more than a slight impairment in functioning; and a score between 81 and 90 indicates an absence or minimal

14

appearance of symptoms and good function in all areas.  Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 34, 4th ed. (revised) 2000.  While the Plaintiff argues that it is unclear how Dr. Snow's opinion is inconsistent with the GAF scores notated in his treatment records, the Court disagrees.  The GAF scores, which indicate moderate functional limitations at worse, clearly contradict Dr. Snow's opinion that the Plaintiff suffered from marked limitations.

The Court also finds that the ALJ's decision to discount Dr. Snow's marked limitations is supported by substantial evidence.  At no time during the relevant period did Dr. Snow indicate in his treatment notes symptoms or observations that would demonstrate severe or marked functional limitations.  [Tr. 276-83, 381-85].  Indeed, the Plaintiff does not recite to the Court a single treatment note that would support such marked limitations, but only contests the ALJ's use of Dr. Snow's GAF scores.  A review of the records suggests that the Plaintiff's treatment was conservative in nature, consisting of adjustments to her medication, and unremarkable examination findings.  Even on the Plaintiff's worse days where she related she was feeling particularly anxious and depressed, or was experiencing crying spells, Dr. Snow assigned a GAF of 60 and 65, indicating no more than moderate to mild symptoms.  [Tr. 277, 281, 382].  In fact, the majority of Dr. Snow's treatment notes reflect a GAF score of 70 and above.  [Tr. 278-80, 283, 381, 83, 85].  In addition, treatment records reveal that the Plaintiff mostly remarked she was doing well or "okay" and that her medication made her feel better.  [Tr. 278-79, 281-83, 38].  Dr. Snow consistently noted that the Plaintiff's mood was no more than mildly to moderately depressed.  [Tr. 276, 278-82, 381].  The foregoing demonstrates substantial evidence detracting from the more restrictive limitations assessed by Dr. Snow.

Accordingly, the Court finds that the ALJ did not err in this regard.

### B. Credibility Finding

Finally, the Plaintiff argues that pursuant to Social Security Ruling ("SSR") 96-7p, the ALJ failed to give specific reasons for finding the Plaintiff less than fully credible. [Doc. 15 at 8]. While the ALJ acknowledged that the Plaintiff's daily activities were fairly limited, the Plaintiff contends that the ALJ's discussion of the Plaintiff's credibility essentially amounts to no more than vague and conclusory statements. [Id. at 8-9].

The Commissioner maintains that the ALJ properly evaluated the Plaintiff's credibility pursuant to 20 C.F.R. § 404.1529 and identified specific factors that detracted from the Plaintiff being found fully credible, including daily activities and objective medical evidence. [Doc. 17 at 10-12].

"In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." Walters, 127 F.3d at 531. The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Id. However, the ALJ's finding must be supported by substantial evidence. Id. Our appellate court has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Sec. of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably

16

be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, received or have received for relief of pain or other symptoms; (vi) any measures that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (July 2, 1996); 20 C.F.R. § 1529(c)(3). Although the ALJ is not required to address every factor, the ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3.

Here, the Plaintiff takes issue with the following narrative provided by the ALJ:

> Although the claimant has otherwise generally described daily living activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, her allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Second, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute the degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the objective medical evidence and other factors discussed in this decision.

[Tr. 22]. The foregoing language, Plaintiff argues, is conclusory and fails to comport with the Ruling's "specific reasons" requirement . [Doc. 15 at 9]. The Court agrees that this language, without more, is unhelpful and far too vague to provide a subsequent reviewer insight as to the

17

reasons for the weight assigned to a claimant's credibility. However, in the instant case, the ALJ did more than recite boilerplate language. In fact, the ALJ spent some time discussing Plaintiff's credibility.

First, the ALJ properly considered the Plaintiff's daily living activities which were found not to be as limiting as one would expect given her allegations. [Tr. 22]; see Walters, 127 F.3d at 532 (holding that "[a]n ALJ may also consider household and social activities engaged in by the claimant in evaluating the claimant's assertion of pain or ailments"). In this regard, the ALJ recalled the Plaintiff's testimony that she could perform some household choices, she watched her youngest grandchild for 20-30 minute periods as well as assisted with his care, and she continued to smoke daily despite experiencing chronic shortness of breath due to suffering from COPD. [Id.]. Second, the ALJ noted that the Plaintiff took prescribed medications for both her physical and mental impairments without side effects and received conservative treatment in nature, which was generally effective in controlling her symptoms [Tr. 22-23], a finding the Court concurs with given its discussion above. Finally, at the outset of the RFC determination, the ALJ noted that another ALJ had previously denied the Plaintiff's application for benefits on July 8, 2011, and that in the current case, the ALJ found that the Plaintiff's condition had not worsen since that time. [Tr. 20]. In discussing the Plaintiff's credibility, the ALJ noted that "[t]he record in its entirety shows [the Plaintiff's] physical condition is essentially the same as the last decision," warranting no change in her RFC. The ALJ properly consider the lack of change as a mitigating factor that weighed against the Plaintiff's credibility. See Drummond v. Comm'r of Soc. Sec., 126 F.3d 837, 842 (6th Cir. 1997) (holding that absent evidence of a changed condition regarding a claimant's impairment, "a subsequent ALJ is bound by the findings of a previous ALJ").

18

In sum, the ALJ acted appropriate under SSR 96-7p by giving specific reasons for determining that the Plaintiff's subjective allegations were not credible to the extent that they warranted a more limiting RFC then opined by the ALJ. See Walters, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

Accordingly, the Court finds the Plaintiff's allegation of error in this respect is not well-taken.

## VI.  CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that the Plaintiff's Motion for Summary Judgment [**Doc. 14**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc.16**] be **GRANTED**.

Respectfully submitted,

  s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).